# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 10-49 (PJS/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| 1. Rodney Darnell Foster, | |
| Defendant. | |

Kevin S. Ueland, Esq., and Nathan P. Petterson, Esq., Assistant United States Attorneys, counsel for Plaintiff.

Jill Clark, Esq., Jill Clark, PA, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before this Court on Defendant's Motion to Suppress Evidence Obtained through Illegal Search (Doc. No. 16).[1] On April 5, 2010, this Court held a hearing on Defendant's motion and heard testimony from two witnesses: Minneapolis Police Department Patrol Officer Mark Bohnsack testified on behalf of the Government; and Lenetta Marie Doughty testified on behalf of Defendant. This Court also received into evidence several defense exhibits.

---

[1] Several other non-dispositive pretrial motions that Defendant and the Government filed are the subject of a separate order of this Court. (Doc. No. 25.)

This Court now issues the following Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons that follow, this Court recommends that Defendant's motion to suppress be denied.

## BACKGROUND

At the hearing, Minneapolis Police Officer Mark Bohnsack testified that on May 31, 2009, he and his partner, an officer whose last name is Ochs, were on patrol near West Broadway Avenue and Lyndale Avenue North in Minneapolis, Minnesota. Around midnight they were in the parking lot of a convenience store and gas station on the northeast corner of Broadway and Lyndale. Officers Bohnsack and Ochs observed a red Ford Taurus leave the parking lot and turn northbound onto Lyndale. When the Taurus left the parking lot, Officer Bohnsack observed that the vehicle failed to signal its turn. Although Officer Bohnsack believed that he had sufficient justification to conduct a traffic stop at that time because the vehicle had not signaled the turn, the officers decided to follow the Taurus for several blocks.

As Officer Bohnsack drove the squad car, Officer Ochs checked the Taurus's license plate and other information to determine who the owner was and whether there were any issues with the vehicle. While the officers followed the Taurus, Officer Bohnsack observed the Taurus tailgating another vehicle for approximately seven blocks. He testified that the Taurus was following the other vehicle at a distance of approximately ten feet. Officer Bohnsack and his partner

2

then decided to stop the Taurus. At that point, the officers activated the emergency lights on their squad car and pulled the Taurus over to the side of the road. Once the Taurus stopped, the officers activated the squad car's flood lights to illuminate the scene.[2]

The officers approached the vehicle from the rear. As Officer Bohnsack approached the rear of the Taurus on the driver's side, he saw the individual in the passenger seat, Defendant Rodney Darnell Foster, bend downward toward the floor of the vehicle. When Officer Bohnsack arrived at the driver's window, he illuminated the interior of the vehicle with his flashlight. He testified that Defendant was attempting to conceal a handgun underneath the passenger seat. Officer Bohnsack's report indicates that Defendant "dropped the pistol" and thereafter "quickly sat up." (Def.'s Hr'g Ex. 2.) According to Officer Bohsack, Defendant failed to conceal the handgun all the way under the seat, and the gun remained visible on the floorboard of the vehicle. Officer Bohnsack signaled to Officer Ochs, who was standing near the passenger side of the vehicle at that point, that he had seen a gun in the vehicle.

Officer Bohnsack then had the driver of the Taurus step out of the vehicle. Officer Bohnsack performed a pat-down search of the driver and placed the driver in the squad car. During this time, Officer Ochs waited by the passenger

---

[2] The following events that occurred during the traffic stop were not video-recorded because the squad car the officers were operating was not outfitted with motor-vehicle recording equipment.

side of the vehicle to keep an eye on Defendant.  Officer Bohnsack explained that he and Officer Ochs proceeded in this manner to secure the vehicle and prevent the driver from fleeing the scene.

After securing the driver in the squad car, Officer Bohnsack then returned to the passenger side of the Taurus.  The officers had Defendant exit the vehicle, and then Officer Bohnsack handcuffed Defendant.  According to Officer Bohnsack's testimony at the hearing, Defendant was arrested at the time he was removed from the vehicle and handcuffed.  The officers then led Defendant to the back of the Taurus and conducted a pat-down search of Defendant's outer clothing.  During the pat-down, Officer Bohnsack found a magazine full of live ammunition for a nine millimeter caliber handgun in Defendant's front left pants pocket.  Officer Bohnsack testified that the ammunition magazine was an extra magazine for the handgun in the Taurus.  Defendant told the officers that the gun was registered in the name of Lenetta Marie Doughty and that it was not stolen. (Def.'s Hr'g Ex. 2.)  After completing the pat-down, the officers placed Defendant in the back of the squad car along with the driver.  Around the time the officers placed Defendant in the back of the squad car, Defendant told Officer Bohnsack that he had been convicted for robbery in the past.

The officers then contacted another officer to bring them a camera because they did not have a camera with them.  When the other officer with a camera arrived on the scene, Officer Bohnsack took a photograph of the interior of the Taurus showing the passenger seat and the passenger-side floorboard.

4

(Def.'s Hr'g Ex. 3.) The photograph depicts the handle of a handgun visible on the floorboard near the underside of the passenger seat. (*Id.*) Officer Bohnsack testified that the position of the handgun in the photograph is the position the officers found it in when they removed Defendant from the Taurus. The officers then confiscated the gun; the gun had live ammunition in the magazine and a live round in its chamber.

At the hearing, Defendant called Lenetta Marie Doughty as a witness. Ms. Doughty explained that she has had an ongoing relationship with Defendant and that the two had a child together earlier this year. Ms. Doughty explained that she had purchased the gun that the officers seized from the Taurus, and that she had a permit to purchase a handgun from a firearms dealer. (*See also* Def.'s Hr'g Exs. 5a and 5b.) Ms. Doughty also stated that earlier in the day Defendant was arrested, she had borrowed the Taurus from a friend, and planned to visit a gun range to fire the handgun at issue. She testified that she was unable to go to the gun range that day and that she had mistakenly left the gun loaded and in the car and had forgotten to remove it after returning the Taurus to her friend. She also testified that she had placed the gun in the car all the way under the passenger seat because it would not fit in the glove box. She stated that she also left the extra magazine for the handgun in the Taurus's glove box.

Ms. Doughty testified that when she realized that she had left the gun in the Taurus, she attempted to contact Defendant to ask him to get the gun out of the car. She attempted to contact him repeatedly that afternoon, and into the

5

evening and night. She managed to reach him before he was arrested, around eleven or twelve at night. When she reached Defendant, he explained to her that he was on his way to her home. Ms. Doughty testified that she told Defendant on the phone that there was an extra magazine for the handgun in the Taurus's glove box.

Defendant has been charged with one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant's motion to suppress evidence seeks to exclude all evidence seized from his person and the Taurus from any trial on these chares on the grounds that law enforcement obtained the evidence in violation of his Fourth Amendment rights.

## DISCUSSION

Defendant argues that this Court should suppress any physical evidence obtained from his person or vehicle on the grounds that (1) the traffic stop was not supported by probable cause or reasonable, articulable suspicion; (2) the search of the vehicle unreasonable; and (3) his arrest was not supported by probable cause.

## I. The Traffic Stop was Supported by Probable Cause

"A traffic stop constitutes a seizure within the meaning of the Fourth Amendment," *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004) (internal quotations omitted), and must, therefore, be supported by reasonable suspicion or probable cause. *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir.

6

2008).  "In determining the reasonableness of an automobile search or seizure, the Supreme Court recognizes that automobiles are inherently mobile, motorists have a lessened expectation of privacy when traveling on the public highways, and '[a]utomobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls.'"  *Johnson v. Crooks*, 326 F.3d 995, 997-98 (8th Cir. 2003) (hereinafter "*Crooks*") (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976)).  "[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator.  [In such a case,] the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant."  *Id.* at 998 (alteration in original) (quotations omitted); *United States v. Walker*, 555 F.3d 716, 720 (8th Cir. 2009) ("[A]ny traffic violation provides probable cause for a traffic stop.").

Defendant's argument that the traffic stop was unreasonable under the Fourth Amendment is not persuasive.  Here, the undisputed evidence is that the officers observed the vehicle make a turn without using a turn signal, and then tailgate another vehicle.  Failure to signal a turn is a traffic violation in the State of Minnesota.  Minn. Stat. § 169.19, subd. 5 ("A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.").  Similarly, following a vehicle too closely is a violation of Minnesota's driving rules.  Minn. Stat. § 169.18, subd. 8(a) ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and

7

the traffic upon and the conditions of the highway."). Because a police officer's observation of a traffic violation is sufficient to establish probable cause to stop the vehicle, and because it is undisputed here that the officers observed the Taurus commit two traffic violations, the traffic stop was supported by probable cause. Therefore, this Court recommends that no evidence be suppressed on the ground that the traffic stop was unjustified.

## II. Defendant's Arrest was Supported by Probable Cause

Defendant also argues that his arrest was not supported by probable cause. "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *United States v. Torres-Lona*, 491 F.3d 750, 755-56 (8th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "[P]robable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity[.]" *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005). "'The determination of whether probable cause exists must not rest on isolated facts; rather it depends on the cumulative effects of the facts in the totality of circumstances.'" *Tokar v. Bowersox*, 198 F.3d 1039, 1046-47 (8th Cir. 1999) (quoting *United States v. Everroad*, 704 F.2d 403, 406 (8th Cir. 1983)).

Although neither party has specified when the arrest occurred, it appears undisputed that Defendant was formally arrested at the time the officers removed him from the vehicle and placed him in handcuffs. Officer Bohnsack testified

that, at that time, Defendant was under arrest. Officer Bohnsack testified that he arrested Defendant because Defendant had the gun. Minnesota's gun-permit statute makes it a gross misdemeanor for a person other than a peace officer to possess a pistol in a motor vehicle without a permit to carry the pistol.[3] *See* Minn. Stat. § 624.714, subd. 1a. This is consistent with Officer Bohnsack's report, which states that Defendant was booked into the Hennepin County Jail for "PC weapons"—i.e., probable cause of a weapons violation. (*See* Def.'s Hr'g Ex. 2.)

Consistent with Minn. Stat. § 624.714, subd. 1a, the Minnesota Court of Appeals has noted, "[i]t is a crime to possess a pistol in a motor vehicle or public place 'without first having obtained a permit to carry the pistol.'" *State v. Williams*, No. A08-2129, 2010 WL 153976, at *3 (Minn. Ct. App. Jan. 19, 2010) (quoting Minn. Stat. § 624.714, subd. 1a), *review granted* (Minn. Mar. 30, 2010). In *Williams*, the defendant argued that the police lacked probable cause to arrest him for possessing a pistol without a permit, and had asked the district court to suppress evidence of the handgun as the product of an illegal arrest. *Id.* at *2-3. The record did not indicate whether the officer demanded a permit from the defendant when he was arrested "or otherwise determined that [the defendant]

---

[3] Officer Bohnsack did not learn that Defendant had previously been convicted of a robbery until after he had already formally arrested Defendant. Therefore, Officer Bohnsack was not making the arrest based on a belief that Defendant was an ineligible person to carry a handgun under Minn. Stat. § 609.165, subd. 1(b)(a).

9

did not have a permit." *Id.* at *1. The district court nevertheless denied the motion to suppress, and a majority of a panel of the Minnesota Court of Appeals affirmed the district court's decision on the grounds that the officer observed the defendant carrying the weapon in a manner that was inconsistent with having obtained a permit, and there was no evidence that the defendant claimed to have a permit to carry the handgun. *Id.* at *5.[4] Thus, the arresting officer in *Williams* had an objectively reasonable belief—i.e., probable cause—that there had been a violation of Minnesota's gun-permit statute even though he had not asked the defendant whether he had a permit to carry the gun.

Similar reasoning supports a conclusion here that there was probable cause for Defendant's arrest for violating Minnesota's gun-permit statute. *See, e.g., United States v. Smith*, 162 F.3d 1226, 1226 (8th Cir. 1998) (concluding that an officer's observation of a suspect's "furtive attempts to hide [a] gun pouch" permitted the rational inference that the pouch contained a gun and that the suspect had it illegally under Arkansas statute making it unlawful to carry a handgun in a vehicle without a permit); *United States v. King*, 990 F.2d 1552, 1563 n.5 (10th Cir. 1993) ("In a state, other than New Mexico, where it is illegal to

---

[4] The Honorable Larry Stauber, Jr., Minnesota Court of Appeals Judge, dissented from the decision in *Williams* on the grounds that probable cause to arrest for a violation of the gun-permit statute "does not exist until law enforcement asks whether a suspect possesses a valid permit for the weapon." 2010 WL 153976, at *6. The Minnesota Supreme Court granted the defendant's petition for further review on March 30, 2010. *State v. Williams*, No. A08-2129 (Minn. Mar. 30, 2010) (order granting petition for further review), http://macsnc.courts.state.mn.us/pubdocs/SC/Storage/ORA082129-0330.pdf.

transport firearms in the passenger compartment of a car, Officer LeMasters, upon observing the pistol, would have had probable cause to arrest Defendants, and therefore, her actions would have been reasonable."). Officer Bohnsack testified that the area he and his partner were patrolling on the night in question was a high-crime area. After they stopped the Taurus, and as the officers approached the vehicle from behind, Officer Bohnsack observed Defendant bend over in the front passenger seat, the kind of furtive movement commonly involved in traffic stops with individuals attempting to hide contraband. Officer Bohnsack then observed Defendant trying to hide a firearm under the passenger seat when he illuminated the interior of the Taurus with his flashlight. Such behavior is not consistent with lawful possession of a firearm; rather, it suggests that the individual attempting to conceal the weapon is likely trying to avoid being caught with it by law enforcement. In addition, Defendant never indicated that he had a permit to carry the handgun in a vehicle. *See Williams*, 2010 WL 153976, at *5 (considering the defendant's failure to indicate that he had a permit to carry a handgun in the probable-cause determination). Taking all these factors into account, this Court concludes that at the time Defendant was formally arrested, a reasonable officer could believe that there was probable cause that Defendant had violated Minnesota's gun-permit statute.

### III. The Search of the Vehicle was Reasonable

"When a vehicle's occupant has been lawfully arrested, the vehicle may be searched without a warrant incident to that arrest 'when it is reasonable to

11

believe evidence relevant to the crime of arrest might be found in the vehicle.'" *United States v. Winters*, __ F.3d __, No. 09-1740, 2010 WL 1286743, at *4 (8th Cir. Apr. 6, 2010) (citing *Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009)). Before they searched the Taurus, the officers had already seen the gun, which was the key piece of evidence for the suspected crime of carrying a pistol without a permit. Thus, their belief that evidence relevant to the crime of arrest would be found in the vehicle was plainly reasonable, and their search of the vehicle based on that belief did not violate the Fourth Amendment.

Alternatively, the discovery of the handgun and search of the car to seize it was justified under the plain-view doctrine. Under the plain-view doctrine, officers may seize evidence in plain view if the officers' conduct meets three criteria: (1) the officers' presence where they plainly view the evidence must not violate the Fourth Amendment; (2) the incriminating nature of the object must be immediately apparent; and (3) the officer must have a legal right to access the object. *United States v. Beatty*, 170 F.3d 811, 814 (8th Cir. 1999); *United States v. Bynum*, Criminal No. 06-171(1) (RHK/JSM), 2006 WL 3007472, at *3 (D. Minn. Oct. 20, 2006). Here, Officers Bohnsack and Ochs had a legitimate basis for approaching the Taurus because they reasonably stopped the vehicle for a traffic violation. When Officer Bohnsack approached the rear of the vehicle he saw Defendant begin to reach with his left hand under the seat, and when Officer Bohnsack reached the driver's-side door of the vehicle, he saw Defendant attempt to hide a handgun under the seat. Officer Bohnsack testified that he was

able to see the handgun on the floorboard by using his flashlight to illuminate the interior of the vehicle. Therefore, when the officers first observed the handgun, they "did so from a perfectly legal and legitimate vantage point." *Beatty*, 170 F.3d at 814; *see also United States v. Desir*, 257 F.3d 1233, 1236 (11th Cir. 2001) (concluding that seizure of a baggie containing a substance that the officer reasonably believed to be crack cocaine was valid under the plain-view doctrine when the officer saw it by "shin[ing] his flashlight through the windshield of [the defendant's] car").

Further, the incriminating nature of the handgun was readily apparent to Officer Bohnsack. Officer Bohnsack explained that when he saw Defendant reaching toward the floorboard as he approached the rear of the vehicle, he considered this behavior suspicious. And the Eighth Circuit has observed, "[h]idden guns, even badly hidden guns, are by their nature incriminating." *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995) (concluding that an officer's observation of the barrel of a partially hidden gun sticking out from under the seat of a parked vehicle satisfied the immediately-apparent requirement of the plain-view doctrine); *cf. United States v. Wilson*, 2 F.3d 226, 232-33 (7th Cir. 1993) (discussing the immediately apparent incriminating nature of handguns seen in plain view in a vehicle because Wisconsin law did not permit firearms to be readily accessible to automobile occupants). Thus, the gun's incriminating nature was immediately apparent.

13

And finally, once Officers Bohnsack and Ochs viewed the handgun, they "had a legal right to briefly enter the vehicle to seize [it]." *Bynum*, 2006 WL 3007472, at *3 ("The incriminating nature of the semi-automatic handgun being apparent, an officer may briefly enter a vehicle to retrieve the contraband.") (citing *Beatty*, 170 F.3d at 814). For these reasons, the search of the vehicle and eventual seizure of the handgun constituted a legitimate plain-view search and seizure that does not violate the Fourth Amendment.

### IV. Ms. Doughty's Testimony was Irrelevant to the Motion to Suppress

The primary defense presented at the hearing was Ms. Doughty's testimony regarding her ownership of the handgun and the circumstances in which it ended up in the Taurus. Ms. Doughty's testimony, although perhaps relevant to the issues to be decided at trial, are not relevant to the issue whether there was probable cause to arrest Defendant for a violation of Minnesota's gun-permit statute, or any other grounds for suppression.

### RECOMMENDATION

Based on the file, and all the records and proceedings therein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained through Illegal Search (Doc. No. 16), be **DENIED**.

Date: April 9, 2010

    *s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 23, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.