UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 10-CR-0049 (PJS/JJK) |
| Plaintiff, | |
| v. | ORDER ADOPTING REPORT AND RECOMMENDATION IN PART |
| RODNEY DARNELL FOSTER, | |
| Defendant. | |

Kevin S. Ueland and Nathan P. Petterson, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Jill Clark, JILL CLARK, PA, for defendant.

Defendant Rodney Foster is charged with being a felon in possession of a firearm and with being a felon in possession of ammunition. This matter is before the Court on Foster's objection to Magistrate Judge Jeffrey J. Keyes's April 9, 2010 Report and Recommendation ("R&R"). Judge Keyes recommends denying Foster's motion to suppress search and seizure evidence obtained during a traffic stop of a car in which Foster was a passenger. The Court has conducted a de novo review of the entire record. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). Based on that review, the Court adopts the findings of fact in the R&R and, with one exception, the conclusions of law in the R&R. Foster's motion to suppress is denied.

Only a few issues merit comment. First, Foster seeks to reopen the evidentiary record to present the testimony of Nathaniel Turner, the driver of the car. Whether to reopen the record is within the Court's discretion. *See* 28 U.S.C. § 636(b)(1) (stating that a district judge "may" receive further evidence when considering objections to an R&R); *United States v. Gill*, 513 F.3d 836, 846 (8th Cir. 2008) (reviewing district court's denial of motion to reopen a suppression

hearing for abuse of discretion). The Court declines to take more testimony regarding the admissibility of the search and seizure evidence.

There can be no dispute that Foster was aware of the potential evidentiary value of Turner's testimony at the time of the hearing before Judge Keyes. Foster was obviously aware that Turner was present during the traffic stop and, in its memorandum opposing Foster's motion (filed one week before the hearing), the government provided a detailed summary of the evidence that it intended to present regarding the stop and the events leading up to it. *See* Docket No. 21 at 4. The testimony presented by the government at the hearing was consistent with the summary in the government's earlier memorandum. In short, none of the government's evidence and arguments could have come as a surprise to Foster.

Despite his awareness of the potential relevance of Turner's testimony, Foster rested without calling Turner as a witness. He also did not ask that the hearing be continued so that Turner could testify.[1] Hr'g Tr. 58, Apr. 5, 2010. In his objections to the R&R, Foster does not even attempt to explain this omission. Nor does he explain why Turner's testimony is necessary for a proper resolution of the issues before the Court or otherwise indicate how Turner's testimony might bear on the Court's factual findings. This is significant because a number of Foster's factual objections relate to trivial and irrelevant facts. For example, Foster objects to

---

[1]It appears that Foster may have intended to call Turner as a witness but that Turner was unable to come to the hearing. *See* Hr'g Tr. 36-37, Apr. 5, 2010 (Foster's counsel noting that she intended to call an unidentified witness who was unable to come). Foster did not seek a continuance, however. Instead, his counsel stated that "[i]t may be that it's not necessary for us to put him on." *Id.* at 37. At the close of the hearing, Foster's counsel rested without asking for an opportunity to call Turner. *Id.* at 58. In any event, whether or not the potential witness referred to in the transcript is Nathaniel Turner, the fact remains that Foster was aware, at the time of the hearing, of the potential relevance of Turner's testimony.

Judge Keyes's statement that Officer Bohnsack and his partner were "on patrol" because, according to Foster, they were actually sitting in their car in a gas-station parking lot. He also objects to the statement that the officers were in the parking lot "around midnight" because, according to Foster, it was actually 12:40 a.m.

The Court need not reopen the evidentiary record to resolve facts that have no bearing on the legal issues before the Court. Nor is it appropriate to reopen the record when the party asking to present additional evidence was well aware of the existence and potential relevance of that evidence at the time of the original hearing and nevertheless chose, for whatever reason, neither to present the evidence nor to seek a continuance so that the evidence could be presented. *Cf. United States v. Chavez Loya*, 528 F.3d 546, 555 (8th Cir. 2008) (affirming trial court's denial of motion to reopen objections where the defendant did not explain why he could not have raised his objection earlier); *United States v. Johnson*, 944 F.2d 396, 403 n.5 (8th Cir. 1991) (holding that the district court did not abuse its discretion in reopening the hearing to consider additional evidence from the government where the defendants raised a new argument for the first time after the hearing). In resolving Foster's objections, therefore, the Court will consider only the evidence that was presented to Judge Keyes.

With respect to Foster's factual objections: Having reviewed the entire record, the Court credits the testimony of Officer Bohnsack (as did Judge Keyes) with respect to the legally significant events of the evening in question. In particular, the Court finds that (1) Bohnsack saw Turner leave the parking lot without signaling his turn; (2) Bohnsack saw Turner's car following a second car too closely, giving Bohnsack the right to make a traffic stop; (3) after stopping

Turner's car, Bohnsack saw Foster attempt to conceal a handgun underneath the passenger seat; and (4) Bohnsack could see the handgun while he was standing next to the car.

Foster picks apart Bohnsack's testimony and compares it to Bohnsack's written report of the incident, contending that there are numerous discrepancies that render Bohnsack's testimony not credible. The Court disagrees. At the hearing, Bohnsack recounted the traffic stop in exhaustive, moment-by-moment detail. The Court does not find it strange or suspicious that Bohnsack's short written summary of what he saw does not have the same level of detail. The Court also rejects Foster's suggestion that Bohnsack's failure to remove Foster from the car immediately makes it unlikely that Bohnsack actually saw a gun. Bohnsack credibly explained that he believed that it was important first to remove the driver so as to prevent a possible escape and ensuing chase.

Finally, with respect to Foster's legal objections: The government argues, and Judge Keyes found, that the officers had probable cause to stop the car both because Turner failed to signal his turn out of the gas-station parking lot and because Turner followed another car too closely. *See United States v. Adler*, 590 F.3d 581, 583 (8th Cir. 2009) ("Any traffic violation, however minor, provides probable cause for a traffic stop." (citation and quotations omitted)).

It appears that Turner's failure to signal his turn out of the gas-station parking lot may not have been a traffic violation. The issue is far from clear. *See Timmerman v. Comm'r of Public Safety*, No. C0-00-973, 2000 WL 1778316, at *1 (Minn. Ct. App. Nov. 21, 2000) (holding that "Timmerman committed no traffic violation when she failed to signal her left-hand turn while exiting from the driveway of a private business onto a public highway"); *but see State v. Urman*, No. A07-0031, 2008 WL 1971406, at *1-3 (Minn. Ct. App. May 6, 2008) (finding probable

cause for a traffic stop where the defendant committed numerous traffic violations, including failing to signal his turn out of a gas-station parking lot). The Court chooses not to resolve the issue — and thus declines to adopt the R&R's conclusion that Turner violated the law by failing to signal his turn — because, even if the failure to signal did not give the officers the right to stop Turner's car, Turner's tailgating of the car in front of him did. *See* Minn. Stat. § 169.18, subd. 8 (prohibiting drivers from following other vehicles more closely than is reasonable and prudent).

Foster contends that he did not violate § 169.18 because he was not driving on a highway during the alleged tailgating incident. *See* Minn. Stat. § 169.02, subd. 1 (stating that, unless otherwise indicated, "[t]he provisions of this chapter relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways, and upon highways, streets, private roads, and roadways situated on property owned, leased, or occupied by the regents of the University of Minnesota, or the University of Minnesota").

Although § 169.02 seems to suggest a distinction between "highway" and "street," these terms are defined synonymously and broadly as essentially any public road. *See* Minn. Stat. § 169.011, subd. 81 (defining "street or highway" as "the entire width between boundary lines of any way or place when any part thereof is open to the use of the public, as a matter of right, for the purposes of vehicular traffic"); *Borchert v. Village of North Oaks*, 117 N.W.2d 396, 400 (Minn. 1962) (treating "private roads" as the antonym of the term "highway" in § 169.02); *Bosell v. Rannestad*, 33 N.W.2d 40, 43 (Minn. 1948) (treating 27th Avenue North in Minneapolis as a "highway" in discussing whether an intersecting portion of Monroe Street located on railroad property was a private road); *Pahl v. Comm'r of Public Safety*, 398 N.W.2d 67, 70-72 (Minn. Ct. App. 1986) (treating "street" and "highway" as synonymous in concluding that the frozen surface

of Lake Mille Lacs is neither); *Frank v. Comm'r of Public Safety*, 384 N.W.2d 574, 576 (Minn. Ct. App. 1986) (holding that a traffic stop for tailgating was justified under § 169.18; the defendant had apparently been driving on a surface street).

Turner was driving on Lyndale Avenue in Minneapolis when he was pulled over. There is no dispute that Lyndale is a "way or place" of which a "part . . . is open to the use of the public, as a matter of right, for the purposes of vehicular traffic." Minn. Stat. § 169.011, subd. 81. The Court therefore concludes that Lyndale qualifies as a "highway" and that Turner could properly be stopped for tailgating while driving on it. *Cf. Frank*, 384 N.W.2d at 576.

Finally, with respect to the remainder of Foster's legal objections: The Court agrees with, and adopts, Judge Keyes's conclusions regarding the validity of Foster's arrest and the subsequent search of Foster and the car. Foster's motion to suppress is denied.

## ORDER

Based on all of the files, records, and proceedings herein, the Court overrules Foster's objection [Docket No. 33] and ADOPTS the R&R [Docket No. 26], with the exception noted above. IT IS HEREBY ORDERED THAT defendant's motion to suppress [Docket No. 16] is DENIED.

Dated: May 11, 2010	s/Patrick J. Schiltz
	Patrick J. Schiltz
	United States District Judge