UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 10-CR-0049 (PJS/JJK) |
| Plaintiff, | |
| v. | ORDER |
| RODNEY DARNELL FOSTER, | |
| Defendant. | |

Kevin S. Ueland, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Jill Clark, JILL CLARK, P.A., for defendant.

A jury convicted defendant Rodney Foster of unlawfully possessing a firearm and ammunition. After trial, the Court granted Foster's motion for acquittal notwithstanding the verdict because the Court decided, after hearing the evidence presented at trial and additional argument from counsel, that Foster's gun and ammunition had been seized in violation of the Fourth Amendment. Without these items, the Court determined, the evidence could not support a guilty verdict. The Court's decision is fully explained in the order granting Foster's motion for a judgment of acquittal and need not be explained again here. Order Oct. 27, 2010 [Docket No. 100], *as amended by* Order Jan. 25, 2011 [Docket No. 112].

The government now moves for reconsideration of the Court's order directing Foster's acquittal. As a procedural matter, the government brings its motion for reconsideration under *United States v. Healy*, 376 U.S. 75, 78-80 (1964), and *United States v. Ibarra*, 502 U.S. 1, 6-7

(1991), which allow such motions even though the Federal Rules of Criminal Procedure do not expressly authorize them.

As a substantive matter, the government argues that Foster lacked Fourth Amendment "standing" to challenge the admission of the gun and that the Court therefore erred in holding that the gun was inadmissible. (The government does not ask the Court to reconsider its decision to suppress the ammunition.) The gun was recovered from a car in which Foster was a passenger. According to the government, the Court should have denied Foster's motion to suppress the gun because, regardless of whether the search of the car was lawful, Foster did not own the car, but was merely a passenger, and thus the search of the car could not have violated Foster's Fourth Amendment rights under *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978).

As a general rule, a search cannot violate a person's Fourth Amendment rights unless the person has a reasonable expectation of privacy in the place searched — whether it be a home, a car, or somewhere else. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ."). In the past, the question of whether such a reasonable expectation of privacy exists has often loosely — and misleadingly — been referred to as a question of Fourth Amendment "standing." *See United States v. Green*, 275 F.3d 694, 698 n.3 (8th Cir. 2001).

The government did not make its "standing" argument to the magistrate judge who first heard argument on Foster's motion to suppress the gun. Or to the undersigned in response to Foster's objection to the magistrate judge's recommendation that the Court deny the suppression motion. Or at any time before trial. Or at any time during trial. Or after trial, in response to

Foster's post-trial motion for a judgment of acquittal and for reconsideration of the Court's earlier suppression order. Only now — after the pretrial proceedings, after the trial, and after the post-trial proceedings — does the government contend, for the first time, that Foster lacked "standing" to seek suppression of the gun.

The government does not explain its failure to raise its "standing" argument earlier. Instead, the government merely contends that Fourth Amendment "standing" is jurisdictional and that, as a result, the government's challenge to Foster's "standing" is unwaivable. Gov't Mot. Reconsider. at 3-4 [Docket No. 107]. In support of this contention, the government relies on a single decision of the Eighth Circuit — *United States v. Rodriguez-Arreola*, 270 F.3d 611 (8th Cir. 2001).

In *Rodriguez-Arreola*, a divided panel of the Eighth Circuit reversed the district court's grant of a defendant's suppression motion as to statements made by a codefendant and held that the defendant lacked Fourth Amendment "standing" as to those statements. 270 F.3d at 616-17. In so holding, *Rodriguez-Arreola* rejected the defendant's argument that the government had waived the "standing" argument by failing to raise it below, explaining: "The government cannot waive [the defendant's] lack of standing, and therefore any argument based on waiver must fail." *Id.* at 617. This was an argument that the government itself had not made, and thus the parties had not briefed the question of whether such a "standing" argument could be waived.[1]

---

[1]The government argued, not that it *could* not waive the "standing" argument, but that it *did* not waive the "standing" argument because it had properly raised the argument in the district court. *See United States v. Rodriguez-Arreola*, No. 01-1034, Appellant's Reply Br. at 5-6 (Mar. 21, 2001) ("The Defendant argues that the government raised for the first time on appeal that he does not have standing to raise his Fourth Amendment claim. That is not the case. . . . [T]he district court was presented with and rejected the government's theory that Fourth
(continued...)

Moreover, in support of its holding, *Rodriguez-Arreola* cited a single case, *Sierra Club v. Robertson*, 28 F.3d 753, 757 n.4 (8th Cir. 1994), which was an administrative-law case that discussed Article III standing, not a criminal-law case that discussed Fourth Amendment "standing."

This Court must ordinarily follow Eighth Circuit precedent regardless of whether that precedent is, in this Court's opinion, correctly decided. But when a decision of the Eighth Circuit conflicts with a decision of the United States Supreme Court, this Court must, of course, follow the decision of the United States Supreme Court. That is the situation here, as *Rodriguez-Arreola*'s holding about Fourth Amendment "standing" directly contradicts the holding of a binding Supreme Court case — *Steagald v. United States*, 451 U.S. 204 (1981).

The relevant facts of *Steagald* are these: Police obtained an arrest warrant for a fugitive and believed that he might be found in a particular house. 451 U.S. at 206. Based only on the arrest warrant — and without a search warrant — police searched the house. *Id.* at 207. They found drugs during the search, and Gary Steagald — who was not the fugitive, but who was standing outside the house at the time of the search — was charged with drug crimes based on the drugs found in the house. *Id.* at 206-07. After the district court denied Steagald's suppression motion with respect to the drugs, he was convicted at trial, and the Fifth Circuit affirmed the district court's denial of the suppression motion. *See id.* at 207.

The Supreme Court reversed, holding that the drugs should have been suppressed because the police violated the Fourth Amendment by searching the house without a search warrant. *Id.*

---

[1](...continued)
Amendment rights are personal and cannot be vicariously asserted.").

-4-

at 222-23.  In addition, the Supreme Court expressly held that the government had waived its right to argue that Steagald lacked a reasonable expectation of privacy in — that is, lacked "standing" as to — the house whose search he challenged:

> [T]he Government now contends that the record does not clearly show that [Steagald] had a reasonable expectation of privacy in the house, and hence urges us to remand the case to the District Court for re-examination of this factual question.
>
> We decline to follow the suggested disposition. . . . [T]he Government was initially entitled to defend against [Steagald's] charge of an unlawful search by asserting that [he] lacked a reasonable expectation of privacy in the searched home . . . . The Government, however, *may lose its right* to raise factual issues of this sort before this Court . . . when it has failed to raise such questions in a timely fashion during the litigation.
>
> We conclude that this is such a case.

*Id.* at 209 (emphasis added).  *Steagald* leaves no doubt that, contrary to *Rodriguez-Arreola*, the government *can* waive a Fourth Amendment "standing" argument.

Further, the Supreme Court has repeatedly rejected the linguistic foundation of *Rodriguez-Arreola* — namely, the use of the word "standing" to describe a defendant's ability to challenge a particular search under the Fourth Amendment.  Without that foundation, the argument that the government cannot waive a challenge to Fourth Amendment "standing" crumbles away.  Put another way, if Fourth Amendment "standing" is not really standing (and it is not), then cases about Article III standing — in particular, cases about the jurisdictional nature of the standing requirement — are irrelevant.

The Supreme Court first rejected the phrase "standing" in the Fourth Amendment context in *Rakas v. Illinois*.  *Rakas* considered "whether it serves any useful analytical purpose to consider this principle" — that is, the principle that Fourth Amendment rights are personal rights

— "a matter of standing, distinct from the merits of a defendant's Fourth Amendment claim." 439 U.S. at 138-39. *Rakas* held that it did not: "[T]he better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Id.* at 139. *Rakas* also said that it was "*dispensing with* the rubric of standing . . . ." *Id.* at 140 (emphasis added).

Twenty years later, in *Minnesota v. Carter*, the Supreme Court reversed a suppression ruling from the Minnesota Supreme Court and criticized that court's use of the term "standing" in the context of a Fourth Amendment challenge. 525 U.S. at 87. *Carter* said: "The Minnesota courts analyzed whether respondents had a legitimate expectation of privacy under the rubric of 'standing' doctrine, an analysis which this Court *expressly rejected* 20 years ago in *Rakas*." *Id.* (emphasis added).

The lesson of *Rakas* has not been lost on the federal courts of appeals. Indeed, the Eighth Circuit itself has held — before, and contrary to, *Rodriguez-Arreola* — that the government waived a Fourth Amendment "standing" argument. In *United States v. Morales*, the Eighth Circuit reversed the district court's denial of a defendant's motion to suppress evidence found in a hotel room. 737 F.2d 761 (8th Cir. 1984). *Morales* held:

> On appeal the government argues that appellant does not have standing to challenge the search of room 141. In *Rakas v. Illinois*, the Supreme Court held that the proper fourth amendment focus should be whether the defendant has a legitimate expectation of privacy in the searched premises and that the defendant has the burden of establishing a legitimate expectation of privacy. In this case, it is undisputed that appellant offered no evidence to demonstrate that he had a legitimate expectation of privacy in room 141.
>
> Despite appellant's failure to prove that he had a legitimate expectation of privacy in room 141, we nonetheless find that

> because of the inconsistent positions the government has taken at trial and on appeal concerning appellant's alleged disclaimer of knowledge of the key [to room 141], *the government has lost its right to challenge appellant's standing*.

*Id.* at 763 (emphasis added; citations and footnote omitted). After citing *Rakas*, *Morales* relied on *Steagald*, saying that *Morales* involved factors similar to those that led the Supreme Court in *Steagald* to "conclude[] that the government had lost its right to challenge standing . . . ." 737 F.2d at 764.

More recently, the Eighth Circuit recognized in *United States v. Green* that "'the concept of "standing" has not had a place in Fourth Amendment jurisprudence' [since *Rakas*]." 275 F.3d 694, 698 n.3 (8th Cir. 2001) (quoting *United States v. Sanchez*, 943 F.2d 110, 113 n.1 (1st Cir. 1991)). And in *United States v. Reinholz*, the Eighth Circuit treated the proposition that Fourth Amendment "standing" arguments are waivable as sufficiently self-evident that it held in a mere footnote: "The record is unclear as to whether Reinholz [the defendant challenging a search] had a sufficient and reasonable enough expectation of privacy in Chevalier's residence to trigger Fourth Amendment protection. The Government, however, failed to raise this issue on appeal and, therefore, *it is waived*." 245 F.3d 765, 773 n.3 (8th Cir. 2001) (emphasis added).

Finally, both the Fifth and the Tenth Circuits have expressly held, contrary to *Rodriguez-Arreola*, that Fourth Amendment "standing" is not jurisdictional. In *United States v. Pack*, the Fifth Circuit, relying on *Rakas*, said that "the question of Fourth Amendment 'standing' is not truly a question of standing in the first place, but is instead an issue of the merits of [the defendant's] claim." 612 F.3d 341, 349 n.4 (5th Cir. 2010). And in *United States v. Dewitt*, the Tenth Circuit found that the government had waived a Fourth Amendment "standing" challenge by failing to raise it below. 946 F.2d 1497, 1499 (10th Cir. 1991). *Dewitt* rejected the

government's argument that a Fourth Amendment "standing" challenge is unwaivable, noting that "[s]uch a proposition would be contrary to established Supreme Court case law," namely *Steagald*. *Id.* Or, as *United States v. DeLuca* bluntly put it, "[Fourth Amendment] standing arguments are not jurisdictional and may be waived." 269 F.3d 1128, 1135 (10th Cir. 2001).

Both *Steagald* and *Rakas* preclude this Court from following *Rodriguez-Arreola.* Moreover, *Rodriguez-Arreola* conflicts with *Morales*, an earlier Eighth Circuit decision that the panel in *Rodriguez-Arreola* could not overrule and that therefore is controlling. *See Kostelec v. State Farm Fire & Cas. Co.*, 64 F.3d 1220, 1228 n.8 (8th Cir. 1995) (explaining that in the case of an intra-circuit conflict, the earliest decision is properly treated as controlling).

Under *Steagald*, *Rakas*, and *Morales*, then, the government can indeed waive the argument that a defendant challenging a search lacked a reasonable expectation of privacy in the place searched. And that is precisely what the government did in this case. By failing to argue in a timely manner that Foster lacked a reasonable expectation of privacy in the car in which the gun was found, the government has waived its right to make that argument.[2]

---

[2]If the Court were to address the government's "standing" argument on the merits, the Court would reject it. The police searched the car that Foster was riding in and found the gun only after they first patted Foster down and found a magazine containing ammunition in his pants pocket. That patdown was unlawful, and it prompted the police to search the car to look for a gun to match the magazine. Regardless of whether Foster had a reasonable expectation of privacy in the car, he was entitled to challenge the patdown as an unlawful search and to seek to suppress all of the evidence that was the fruit of that unlawful search, including the gun. *See United States v. Olivares-Rangel*, 458 F.3d 1104, 1117 (10th Cir. 2006) ("While the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding the Fourth Amendment violation which constitutes the poisonous tree, the law imposes no separate standing requirement regarding the evidence which constitutes the fruit of that poisonous tree." (citation omitted)); *United States v. Green*, 275 F.3d 694, 699 (8th Cir. 2001) ("Even though Green [the
(continued...)

The government had opportunity, after opportunity, after opportunity to argue that Foster lacked a reasonable expectation of privacy in the car. To allow the government to make this argument for the first time now, after multiple hearings and a jury trial, would be unfair to Foster and would undermine the Court's ability to conduct proceedings in an orderly fashion. All litigants, including the government, must live with their litigation decisions, even if they regret those decisions in hindsight.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the motion of the government [Docket No. 107] for reconsideration of the Court's order granting defendant Rodney Foster's motion for a judgment of acquittal is DENIED.

Dated: February 1, 2011        s/Patrick J. Schiltz
       Patrick J. Schiltz
       United States District Judge

---

[2](...continued)
defendant] lacked a possessory interest in the motor vehicle that would enable him to directly challenge the search [of the motor vehicle he was riding in], he may still contest the lawfulness of his own detention and seek to suppress evidence as the fruit of his illegal detention.").